UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

|  |  |  |
|---|---|---|
| ROXANNE KING, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 23-291-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MARTIN O'MALLEY, Commissioner of | ) | **MEMORANDUM OPINION** |
| Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Roxanne King appeals the Social Security Administration's ("SSA") denial of her application for disability insurance benefits. She contends that the Administrative Law Judge ("ALJ") assigned to her case made legal errors that warrant reversing the SSA's decision and remanding the matter for further proceedings. More specifically, King asserts that the ALJ failed to properly consider the "total limiting effects" of her impairments when determining her capacity to work. Upon review, the undersigned concludes that the ALJ reasonably relied on the medical evidence of record and properly applied the rules of law. Therefore, the administrative decision to deny benefits will be affirmed.

**I.**

King applied for Disability Benefits ("DIB") in late November 2022, alleging that she became disabled on August 20, 2022. [Record No. 11] The State Agency Disability Determination Service originally denied her application in December 2022 and upon reconsideration a few months later. *Id*. She then requested a hearing with the Social Security Administration.   Administrative Law Judge Robert Bowling likewise denied King's

application on June 29, 2023, finding that she is not disabled.  Thus, King has exhausted her administrative remedies and jurisdiction is proper pursuant to 42 U.S.C. § 405(g).

King has a high school education and resides in Richmond, Kentucky.  She previously worked as a compliance officer, industrial hygienist, communications technician, operations manager, and law enforcement officer.  [Record No. 11]  The ALJ has determined that King suffers from "severe impairments" which include major depressive disorder and post-traumatic stress disorder.  [Record No. 9]  He further found her Ehlers-Danlos Syndrome constituted a non-severe condition.[1]  In addition, the ALJ concluded that King did not have a medically determinable impairment based on pain resulting from this condition.

Despite the foregoing issues, the ALJ also determined that King's residual functional capacity ("RFC") rendered her able to perform certain types of work with limitations.  The SSA considers an individual's RFC as "the most [a person] can still do despite [her] limitations."  *See* 20 C.F.R. § 404.1545(a)(1).  According to the ALJ, King's limitations allow her to only perform labor "involving simple, routine, and repetitive tasks, with only occasional workplace changes" where encounters with colleagues and supervisors only occur on an "occasional" basis.  [Record No. 11]  Based on this assessment, the ALJ concluded that King could perform a variety of jobs in the national economy.

King challenges the ALJ's determinations, claiming that her ability to work is restricted by her physical and mental impairments.

---

[1] According to the Mayo Clinic, "Ehlers-Danlos syndrome is a group of inherited disorders that affect your connective tissues – primarily your skin, joints and blood vessel walls . . . People who have Ehlers-Danlos syndrome usually have overly flexible joints and stretchy, fragile skin."  *Ehlers-Danlos syndrome*, Mayo Clinic, available at https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/ symptoms-causes/syc-20362125 (last visited March 22, 2024).

**II.**

A "disability" under the Social Security Act (the "Act") is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner at the fifth and final step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. *See* 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment expected to last for at least twelve months and meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. *See* 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot decide regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. *See* 20 C.F.R. § 404.1520(e). If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

At the fifth step, the Commissioner considers the claimant's RFC, age, education, and past work experience to determine if her impairments prevent her from doing the same kind of

work for determining whether she can perform other labor.  At this step, the burden shifts to the Commissioner for proving "that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).  If she cannot perform other work, the Commissioner will find the claimant disabled.  *See* 20 C.F.R. § 404.1520(g).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether proper legal standards were applied in reaching the decision.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is shown when reasonable minds can accept the body of proof as sufficient to support the decision.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Commissioner's findings are conclusive if they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Even if a reviewing court would have reached a different conclusion, the Commissioner's decision must stand if it is supported by substantial evidence.  *See Jones*, 336 F.3d at 474.

### III.  Discussion

### A.  The Alleged Failure to Consider All Limitations

King's claims that the ALJ did not consider all evidence when determining her RFC in violation of 20 C.F.R. § 404.1545(c).  She argues her RFC was miscalculated because the ALJ did not include all the limitations identified by the State Agency Disability Determination Service's findings.  Specifically, she contends the ALJ's determination of her RFC—which found that she is limited to only "occasional" interactions with co-workers and supervisors— improperly failed to account for the state agency's finding that she is limited to both "occasional *and* brief" interactions.  [Record No. 11]

However, an ALJ is not required to incorporate *all* limitations from a physician's opinion into the official RFC determination, even if the adjudicator found that opinion persuasive. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). As the Sixth Circuit has emphasized, there is no requirement that the RFC correspond directly with a specific medical opinion. *See Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity.").

Nonetheless, King claims that the ALJ improperly determined her RFC by not including that she must be limited to "brief" interactions in addition to those considered "occasional" after the state agency reviewing her claim concluded as much. She emphasizes that only after given adequate time to become familiar with co-workers and supervisors, can she maintain effective interactions that are occasional and brief. [Record No. 9] Further, she argues that both occasional *and* brief interactions would allow her to "respond appropriately to changes in a low-stress work setting with advanced notice and time to adjust work with performance accordingly." *Id*. Notably, this would significantly limit the jobs she is able to perform. King cites to a district court opinion to argue that the ALJ in her case failed to build a "logical bridge" between the evidence and his finding that she is limited to jobs that involve occasional interactions. *See Wylds v. Comm'r of Soc. Sec.*, 2022 WL 1539266 (N.D. Ohio May 16, 2022). In *Wylds*, the court emphasized that "an occasional interaction . . . does not account for a superficial interaction." *Id*. at 23. But that decision held merely that a job requiring

"superficial" interaction with others requires distinctive consideration from one that requires interaction described as "occasional."  But as the Commissioner observes, the state agency said nothing about King's limitation to superficial interactions.

Ultimately, the ALJ's failure to include King's limitation to occasional *and* brief interactions in determining her RFC constitutes a harmless omission.  In fact, other courts within this circuit have concluded that the failure to include a specific social limitation in earlier steps is considered harmless if an ALJ cites possible jobs with a certain "people code" requiring minimal, if any, social interaction at the fifth step.  *See, e.g., Bryant v. Kijakazi*, 2023 WL 4982261, at *4 (W.D. Tenn. Aug. 3, 2023) (collecting cases agreeing with the Commissioner's argument that a social interaction rating of eight "require[s] little, if any, social interaction according to the [Dictionary of Occupational Titles] descriptions and renders moot the omission of a superficial interaction limitation in the RFC finding"); *Sothen v. Comm'r of Soc. Sec.*, 2014 WL 5823462 (N.D. Ohio Nov. 10, 2014) ("[A]ny failure to include a limitation specifying minimal interaction with others was harmless error because including such a limitation on remand would not alter the jobs available to the claimant under the existing testimony of the [vocational expert].").

Here, the ALJ rectified any purported deficiency in his analysis by accounting for the omitted social limitation at the fifth step.  According to the Commissioner, "the jobs identified by the vocational expert—which the ALJ found Plaintiff could perform—did not require more than brief social interaction based on the job descriptions and terms defined by the Dictionary of Occupational Titles."  [Record No. 11]  Therefore, even if the ALJ was obligated to identify King's "brief" social interaction limitation as part of her RFC determination, the ALJ still identified jobs King can perform that exist in significant number.  In summary, to the extent

the ALJ made an error, it was harmless.  *See Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) ("[N]o principle of administration law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")

### B.  The Alleged Failure to Account for "Total Limiting Effects" of Impairments

King also claims that the administrative determination regarding her RFC is flawed because the ALJ failed to account for the entirety of limitations caused by her Ehlers-Danlos Syndrome.  As noted, the ALJ found this condition as medically determinable but non-severe "with no more than a minimal impact on her ability to perform basic work activities." [Record No. 11]   King, however, contends that the ALJ violated 20 C.F.R. § 404.1545(e) by not accounting for the total limiting effects of this non-severe impairment in determining her RFC.

Specifically, King challenges the ALJ's reasoning in determining her Ehlers-Danlos Syndrome qualifies as a medically determinable but non-severe impairment while simultaneously concluding that the resulting chronic pain is medically nondeterminable.  *Id.* By extension, she argues that the ALJ's "failure to address the total effects of her limitations caused by Ehlers-Danlos Syndrome "constitutes harmful error because a substantial loss of the ability to meet the basic . . . demands of the workplace severely limits the occupational base." *Id*.  King also alleges that "the AFJ's RFC accounts for no physical limitations at all," despite the obligation to consider the "total limiting effects" of an impairment.  *Id*.

The Court notes initially that the ALJ properly concluded that King's Ehlers-Danlos Syndrome is a non-severe impairment.  *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) ("The mere diagnosis of [an impairment] . . . says nothing about the severity of the condition.").  After reviewing relevant records, the ALJ concluded the impairment qualifies

as a "slight abnormalit[y]," which was "under medical management."  [Record No. 11]  As a result, he concluded that it has "such minimal effect that [it] would not be expected to interfere with [King's] ability to work."  *Id*.

But even if the ALJ erred by failing to classify King's chronic pain caused by her Ehlers-Danlos Syndrome as a severe impairment, it was harmless.  The Commissioner correctly observes that, "[w]hen an ALJ determines that one or more impairments is severe and considers all of a claimant's impairments in the remaining steps of the disability determination," failure to properly find an additional severe impairment at step two "[does] not constitute reversible error."  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) (finding it "legally irrelevant" that the ALJ concluded certain impairments were not severe where the ALJ deemed other impairments severe); *see generally Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987) (finding that it is immaterial which impairments or how many impairments an ALJ designates as severe because the standard used at step two is merely a *de minimis* screening device to dispose of groundless claims).  Here, the ALJ concluded King suffers from two severe impairments at the second step.  Any failure to consider an additional impairment as severe at this step did not prejudice King's application in subsequent steps, including in the determination and application of her RFC at steps four and five.

Confirming this point, the Sixth Circuit has explained that an ALJ properly considers non-severe impairments in the RFC assessment so long as he or she: (1) expressly reference SSR 96-8p in the decision; (2) discuss the functional limitations imposed by the plaintiff's non-severe impairments; and (3) assert that they considered the entire record and all the plaintiff's symptoms. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020).

Here, the ALJ met the standard set forth in *Emard*.  First, the ALJ referenced SSR 96-8p in his decision, "explaining his obligation to consider all of [Plaintiff]'s impairments, including impairments that are not severe" in making the RFC determination."  [Record No. 11]  Second, the ALJ explained the lack of functional limitations caused by King's non-severe Ehlers-Danlos Syndrome.  As he pointed out, King reported in her function reports that she did not have "any problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair-climbing, or using hands."  *Id*.  Although King reported that she experienced chronic pain in her knees and hips, her providers observed that medication made the pain tolerable.  *Id*.  The ALJ also observed that King's physical examinations after her alleged onset disability were "largely normal with no evidence of significant complications or exacerbations."  *Id*.  And finally, the ALJ certified that he conducted a "careful consideration of the entire record" and "considered all symptoms" in the RFC determination.

The record does not reflect that the ALJ failed to account for the total limiting effects of King's Ehlers-Danlos Syndrome in determining her RFC.  Instead, he considered all of King's medically determinable impairments, as well as any functional limitations, as required by law in reaching his conclusion.

### C.  Rejected Subjective Complaints

King also argues that the ALJ failed to consider her subjective statements regarding the extent and severity of her impairments.  Specifically, she argues that the pain caused by Ehlers-Danlos Syndrome prevents her from physical exertion and her mental impairments limit her ability to function in public.  She claims she cannot stand long enough to perform simple tasks because simply touching the floor with her feet "causes severe pain."  [Record No. 9]  In September 2022, King also visited an emergency room after experiencing a syncopal episode.

*Id*.   The next month, she was examined by internist Dr. Stella Stanley after reportedly continuing to experience chronic pain.  *Id*.   King also reports experiencing violent outbursts and thoughts of suicide.  *Id*.  And on at least one occasion, she was admitted to a psychiatric unit for "cutting her wrists" with a scalpel.  *Id*.  During her examination by the hospital's psychiatrist, "she explained that she was struggling with increased stress about work."  *Id*.

The Sixth Circuit provided guidance in *Jones* for determining the weight to assign a claimant's subjective complaints, observing that "[a]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."  *See Jones*, 336 F.3d at 476 (citations omitted).  As the ALJ reasonably explained, King's statements regarding the severity of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record."  [Record No. 11]; 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.  There must be objective medical evidence from an acceptable medical source that . . . would lead to a conclusion that you are disabled.")  Although the ALJ acknowledged and considered King's claims that "she could not go out in public and could not function in the office," he cited medical records showing that her mental health condition has stabilized with treatment.  Additionally, an examination revealed that King's mental status showed "normal thought content, behavior, speech, cognition, insight, and judgment."  [Record No. 11]  King also testified that "her panic attacks and suicidal thoughts have improved with her current medications."  *Id*.

Nonetheless, King argues that the ALJ failed to discuss her daily activities as part of her SSR 16-3P, which is used to evaluate a claimant's symptoms and credibility.  But the ALJ discussed her activities in his function report, recognizing that King testified she likes to garden

and see a friend at least weekly.  *Id*.  He also notes that King reported purchasing a bicycle for recreational use and even had contemplated "moving to Mexico."  *Id*.  The ALJ was not required to explicitly discuss King's subjective complaints regarding her non-severe physical impairments simply because he referenced them in her SSR 96-8p evaluation.  As mentioned previously, the ALJ properly discussed King's functional limitations at the second step and certified that he had considered the entirety of the record in reaching his determinations, discharging his burden.

More broadly, King finds no relief from the claim that the ALJ improperly considered the evidence presented by not addressing every individual piece in explaining his decision.  In fact, an ALJ can reasonably and properly consider a body of evidence, which often include a claimant's statements, as required without listing each component part and the weight assigned to it.  *See Kornecky v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").  The ALJ did not commit reversable error, by failing to spend significant time discussing whether he found King's personal statements credible or analyzing her daily activities in depth.

### D.  The Alleged Failure to Order a Consultative Examination

Finally, King argues that the ALJ failed to "develop the record by not ordering a consultative examination" to assist in determining the impacts of Ehlers-Danlos Syndrome on her ability to work.  [Record No. 9]  But as the Commissioner correctly notes, "while an ALJ may decide to purchase a consultative examination," 20 C.F.R. § 404.1519(a) does not require it.  *See Robinson v. Comm'r of Soc. Sec.*, 513 F. App'x 439, 441 (6th. Cir. 2013).  And nothing

in the record indicates that the ALJ believed he lacked sufficient evidence to reach his determination or suggests that he committed an error by failing to order an examination.

## V.

King has not established that the ALJ erred in any of his determinations regarding her claimed impairments or their effect on her ability to perform work in the economy. Instead, the record demonstrates that the ALJ relied upon sufficient evidence to reach his decision. Therefore, being sufficiently advised, it is hereby

**ORDERED** that King's request to reverse the Commissioner of Social Security's decision denying her disability insurance benefits [Record No. 9] is **DENIED**.

Dated: March 25, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky